**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| TRIDENTIS, LLC, | |
| *Plaintiff*, | |
| v. | Case No. 1:23-cv-97 |
| CITY OF ALEXANDRIA, | |
| *Defendant.* | |

## COMPLAINT

1.      The City of Alexandria has announced a policy—the BIPOC Small Business Grant Program—that gives money to businesses based on their owners' skin color.

2.      To be eligible for the program, a business must demonstrate that its owners are at least 51% black, indigenous, or people of color. These BIPOC owners must come from one of four groups—Black or African American, Asian American, Hispanic American, or Indigenous or Native American. In other words, no whites allowed.

3.      This program is blatantly illegal. The Equal Protection Clause prohibits Alexandria from discriminating based on race, and this express racial exclusion cannot possibly satisfy strict scrutiny. Plaintiff, a business in Alexandria who wants to apply for the program but is excluded because its owner is the wrong race, is entitled to relief.

## PARTIES

4.      Plaintiff, Tridentis, LLC, is a professional engineering, logistics, and program management firm based in Alexandria, Virginia.

5.      Tridentis is a for-profit small business licensed, located and locally owned and operated in Alexandria. Its owner is a resident of Alexandria. He is white.

6.      Defendant, the City of Alexandria, is an independent city in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under 28 U.S.C. §1331 and §1343.

8.      Venue is proper under 28 U.S.C. §1391 because Alexandria resides here and all the events and omissions giving rise to the claim occurred here.

## FACTUAL ALLEGATIONS

**A.      The City of Alexandria provides grants through the BIPOC Small Business Grant Program.**

9.      The City of Alexandria operates the BIPOC Small Business Grant Program.

10.      The program's stated objective is to provide "grants to qualifying Black, Indigenous, and people of color ('BIPOC') owned small local business."

11.      The Program will provide monetary grants to the businesses that get accepted. Depending on the nature of the business and the use of the funds, recipients can receive up to $7,000.

12.      Grant recipients can use program funds for three different business purposes: operations, resiliency, and growth. "Business operations" are "expenses related to running a business." These expenses include working capital, inventory, rent or lease costs, and payment of taxes. "Business resiliency" refers to "investments to support the long-term profitability of the business." These expenses include marketing, technology enhancements, professional services like accountants and lawyers, and business consultants. "Business growth" refers to "capital and equipment expenses." These expenses include equipment replacement, improvements to the interior of a business, and signage.

13.      The application period for the program will open on January 26, 2023, at 9:00 a.m. and will close on February 10, 2023 at 5:00 p.m.  The application is available online at alexandriava.gov/BIPOC.

14.     Applicants who did not receive Coronavirus Aid, Relief, and Economic Security Act or American Recovery Plan Act funds through the City of Alexandria will receive priority.

15.     If the number of prioritized applicants exceeds the available grants, recipients will be selected on a first come-first serve basis.

16.     Winners will be announced in March 2023.

17.     Grants will be distributed in April 2023.

**B.      Alexandria excludes businesses from the program based on race.**

18.     Eligibility for the program depends on the business owners' race.

19.     The first listed eligibility requirement for participation in the program is that a business must "[d]emonstrate at least 51% BIPOC ownership."

20.     The program defines a BIPOC-owned business as "a business that is at least 51 percent owned by one or more minority individuals." A corporate entity qualifies if "at least 51 percent of the equity ownership ... is owned by one or more minority individuals."  In addition, "both the management and daily business operations" must be "controlled by one or more minority individuals."

21.     The program defines "minority individual" as someone who is "Black or African American," "Asian American," "Hispanic American," or "Indigenous or Native American." The program then defines what it means to be one of those races:

1. **"Black or African American"** means a person having origins in any of the original peoples of Africa and who is regarded as such by the community of which this person claims to be a part.

2. **"Asian American"** means a person having origins in any of the original peoples of the Far East, Southeast Asia, the Indian subcontinent, or the Pacific Islands, including but not limited to Japan, China, Vietnam, Samoa, Laos, Cambodia, Taiwan, Northern Mariana Islands, the Philippines, a U.S. territory of the Pacific, India, Pakistan, Bangladesh, or Sri Lanka, and who is regarded as such by the community of which this person claims to be a part.

3. **"Hispanic American"** means a person having origins in any of the Spanish-speaking peoples of Mexico, South or Central America, or the Caribbean Islands or other Spanish or Portuguese cultures and who is regarded as such by the community of which this person claims to be a part.

4. **"Indigenous or Native American"** means a person having origins in any of the original peoples of North America and who is regarded as such by the community of which this person claims to be a part or who is recognized by a tribal organization.

22.     White-owned businesses are not eligible—a point the program reiterates several times. "Businesses without 51% BIPOC ownership" are "excluded from applying to the program."

23.     To prepare for the application, Alexandria instructs businesses to collect "[d]ocumentation" proving their BIPOC ownership, including "the percentage" of BIPOC owners and their "names." When filling out the application, businesses must confirm that they have "at least 51% BIPOC ownership" or they cannot continue.  If the business checks "yes" that its ownership is majority BIPOC, the application asks which communities best represent the majority of owners—"Black or African American," "Hispanic American," "Asian American," or "Indigenous or Native American." After answering that question, an applicant must identify the "percentage" of ownership in each of these four categories and the "names" of which owners are which races.

**C.     Tridentis is ineligible for grant funds because of its owner's race.**

24.     Tridentis is ready and able to apply for a grant through the program, but it's ineligible because it's not a majority BIPOC-owned business. Tridentis's owner is white.

25.     Tridentis has qualified expenses, including rental payments, that it would spend the grant on by July 2023.

26.     Tridentis satisfies all the nonracial requirements for the Program.

27.     Tridentis is licensed in Alexandria.

28.     Tridentis is a for-profit small business.

29.     Tridentis is located within Alexandria.

30.     Tridentis has 28 employees.

31.     Tridentis is owned by a resident of Alexandria and is operated from its headquarters in Alexandria.

32.     Tridentis plans to remain in operation in Alexandria through December 31, 2023.

33.     Tridentis is in good standing with Alexandria, is current on all local taxes, and is complying with all applicable laws.

34.     Tridentis is not in bankruptcy proceedings.

35.     If it were eligible for the program, Tridentis would receive priority. It has not received a Coronavirus Aid, Relief, and Economic Security Act grant or an American Rescue Plan Act grant from the Alexandria.

**COUNT**
**Violation of the Fourteenth Amendment**
**(42 U.S.C. §1983)**

36.     Tridentis repeats and realleges each of the prior allegations.

37.     Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983. The word "person" includes municipalities and other local governments. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978). And the program is an "official municipal policy." *Id.* at 691.

38.     The Fourteenth Amendment provides that no person shall be denied "the equal protection of the laws."

39.     The "central mandate" of equal protection is "racial neutrality" in government pro-grams. *Miller v. Johnson*, 515 U.S. 900, 904 (1995). "Whenever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 229-30 (1995).

40.     "A racial classification, regardless of purported motivation, is presumptively inva-lid and can be upheld only upon an extraordinary justification." *Shaw v. Reno*, 509 U.S. 630, 643-44 (1993). Thus, "any official action official action that treats a person differently on account of race or ethnic origin is inherently suspect." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 310 (2013). This principle "is not dependent on the race of those burdened or benefited by a particular classification." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 494 (1989).

41.     "[A]ll racial classifications ... must be analyzed by a reviewing court under strict scrutiny." *Adarand*, 515 U.S. at 227. This standard requires a "detailed examination, both as to ends and to means." *Id*. at 236. Racial classifications can be upheld only if they are "narrowly tailored measures that further compelling governmental interests." *Id*. at 227. The City bears the burden to "assert a compelling state interest" and "demonstrate that its [program] is necessary to serve the asserted interest." *Burson v. Freeman*, 504 U.S. 191, 199 (1992).

42.     The program is a racial classification because, on its face, it includes and excludes businesses based on the race of their owners. It must satisfy strict scrutiny, which it cannot.

43.     Defendants have no compelling interest. A "generalized assertion that there has been past discrimination" does not count. *Croson*, 488 U.S. at 498. Nor can a racial classification

be justified by a general interest in retaining businesses. *See Croson*, 488 U.S. at 495-98. Alexandria has no evidence that the program is a response to its own prior discrimination against BIPOC-owned businesses.

44.    The complete exclusion of white-owned businesses is also not narrowly tailored. Blanket racial exclusions, with no individualized review, cannot be narrowly tailored. And there is no evidence that Alexandria ever "considered methods other than explicit racial classification to achieve [its] stated goals." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 734 (2007). Nor can Alexandria show "the most exact connection between justification and classification." *Wygant*, 476 U.S. at 280. Even though there are those (like the City) who treat members of these groups as a monolithic "BIPOC," all should agree that these four racial groups have very different experiences and histories. The 51% cutoff is also arbitrary. So is allowing businesses to mix and match minorities to reach the 51% threshold.

## PRAYER FOR RELIEF

Tridentis respectfully requests that this Court enter judgment in its favor and against Alexandria and provide the following relief:

A.    A declaratory judgment that Defendant's BIPOC Small Business Grant Program violates the Fourteenth Amendment of the United States Constitution.

B.    A temporary restraining order and preliminary injunction barring Defendant from opening the application period, closing the application period, selecting grant recipients, or enforcing its racially discriminatory eligibility criteria for the BIPOC Small Business Grant Program.

C.    A permanent injunction barring Defendant from enforcing its racially discriminatory eligibility criteria for the program.

D.    Nominal damages.

E.    Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

F.    And all other relief that Tridentis is entitled to.

Dated: January 23, 2023

Respectfully submitted,

*/s/ Bryan Weir*
Bryan Weir (VA Bar No. 82787)
Cameron T. Norris (VA Bar No. 91624) (pro hac vice forthcoming)
Gilbert C. Dickey (DC Bar No. 1645164) (pro hac vice forthcoming)*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
bryan@consovoymccarthy.com
cam@consovoymccarthy.com
gilbert@consovoymccarthy.com

*Admitted in AL, DC, NC, and WV, but not yet VA. Supervised by principals at the firm.